UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                    :
BARBARA J. LOVELL,                                  :
                                                    :
                           Plaintiff,               :          24-CV-02873 (JAV)
                                                    :
            -v-                                     :          OPINION AND ORDER
                                                    :
THE CITY OF NEW YORK, et al.,                       :
                                                    :
                           Defendants.              :
------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Plaintiff Barbara J. Lovell, proceeding *pro se*, brings this action pursuant to

the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and the

Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, against

her former employer, the Bronx District Attorney's Office ("the DA"), and the City of

New York (collectively, "Defendants" or "the City"). Plaintiff alleges disability

discrimination and failure to accommodate under the ADA as well as entitlement to

withheld FMLA benefits. Before this Court is Defendants' motion to dismiss for

failure to state a claim. ECF No. 43 ("Mot."). For the reasons set forth below, the

City's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

At the motion to dismiss stage, the following facts are accepted as true and

construed in the light most favorable to Plaintiff. *Xeriant, Inc. v. Auctus Fund LLC*,

141 F.4th 405, 411 (2d Cir. 2025).

On August 8, 2022, Plaintiff began her employment as a Community Assistant in the Domestic Violence Unit of the Bronx County District Attorney's Office. ECF No. 30 ("Amended Complaint" or "FAC"), ¶ 2. Plaintiff had worked full-time for the City of New York in various clerical and caseworker capacities since 2003. *Id.*, ¶ 5. On or about August 26, 2022, Plaintiff injured her right big toe on a set of concrete steps. *Id.*, ¶¶ 7-8. Although Plaintiff's injury did not immediately appear serious, her pain substantially increased. *Id.*

On August 30, 2022, Plaintiff texted her supervisor to notify him that she would be taking a sick day. *Id.*, ¶ 8. That day, Plaintiff sought evaluation at the Albert Einstein Hospital emergency room, where she learned that her underlying diabetes had exacerbated her broken toe by causing swelling and a serious infection in her right big toe bone, requiring partial amputation. *Id.*, ¶¶ 7-8. She received emergency surgery the following day. *Id.*, ¶ 8. On August 31, 2022, Plaintiff texted her supervisor to update him that she had been admitted to the hospital and would be out of work for the rest of the week. *Id.*, ¶ 9 & Ex. A. On September 2, 2022, she was discharged from the hospital with a doctor's note. *Id.*, ¶ 11 & Ex. B. On September 7, 2022, Plaintiff's supervisor told her that he would forward her request for leave to a specified Bronx District Attorney's Office Human Resources Department ("HR") email address. *Id.*, ¶ 14. The following day, an HR representative also asked her to "submit future inquiries of this nature" to another HR email address. *Id.*, ¶ 15. In her opposition papers, Plaintiff includes an allegation that Plaintiff forwarded to that address, on her union letterhead, a form

requesting disability support from her union, "which thoroughly detailed information of [her] medical disability status" on September 15, 2022.  Opp'n Mem., ¶ 5.

On September 22, 2022, Plaintiff received a letter from HR verifying her unpaid leave status as of August 30, 2022.  FAC, ¶ 17.  That day, she had a conference call with two HR personnel who spoke to her "in a harassing and threatening manner" by warning her "that if she did not agree to resign, effective October 14, 2022, she would be terminated," but "if she agreed [to resign], she could apply for disability leave under the FMLA, and they would process her request." *Id.*, ¶¶ 18-19.  Believing it her "only choice," she resigned via email after that phone call.  *Id.*, ¶ 22 & Ex. D.  The following day, on September 23, 2022, Plaintiff received an email from HR stating: "if we do not receive [your resignation] letter by 4pm today, we will have to move forward with the termination of your employment with the Office of the Bronx District Attorney effective today, September 23, 2022."  *Id.*, ¶ 23 & Ex. E.  Plaintiff replied that she had already sent a resignation email the prior day because "[y]ou assured me that once you received the resignation letter, I would get the revised letter [indicating a return-to-work date] that I needed to process my disability claim."  *Id.*, & Ex. F.

In the same email, she repeated her request for "the FMLA Form."  *Id.*  At no time was Plaintiff told that she was ineligible for FMLA leave.  *Id.*, ¶ 19.

On September 28, 2022, an HR representative wrote "to memorialize our discussion on September 22, 2022," during which "we agreed that we would accept

your resignation effective October 14, 2022, in lieu of termination, to allow you the opportunity to finalize your application for disability through your union." *Id.*, ¶ 25 & Ex. G. In that email, Plaintiff was told that HR could not provide "a modified letter [indicating her] expected date of return" because "you have notified us of your resignation date and have also notified us, during our September 22, 2022 call, that you are unable to return to work." *Id.*

On September 29, 2022, Plaintiff emailed her union and workplace HR representatives alike, retracting her resignation, identifying her return-to-work date as October 14, 2022, repeating her request for "the unpaid [leave] letter to be revised with the return date," and "reiterating again I NEVER stated" to HR "that I was not going back to work" and that the HR representative "forced me to send a resignation letter." *Id.*, ¶ 26 & Ex. H. Plaintiff received the following reply from HR on October 6, 2022: "we received and acknowledge your email that you will report back to work on October 14th. At this time, we expect you back in the office on that date." *Id.* Plaintiff expected to comply. *Id.*, ¶ 27.

On October 13, 2022, however, Plaintiff's vascular surgeon assessed her wound and determined that she needed additional recovery time. *Id.*, ¶ 28. Plaintiff shared with her supervisors a note on hospital letterhead from her doctor, informing her employer that "[a]s per the assessment she can return to work on 12/5/22 without any restrictions" and offering a telephone number for follow-up. *Id.*, Ex. I. Plaintiff did not receive a reply from her supervisors. *Id.*, ¶ 28.

4

Plaintiff alleges that, having not received responses from HR in some time, she went to the DA's Office on March 28, 2023, to meet in person with an HR representative. *Id.*, ¶ 33. At that time, she was informed by an HR representative that she had been terminated on October 19, 2022, following a conference call with HR. *Id.*, ¶¶ 34-35. Plaintiff alleges that no such conference call took place, and that prior to March 28, 2023, she had not been notified of her termination. *Id.*, ¶¶ 35-37.

Plaintiff filed a complaint with the Equal Opportunity Employment Commission ("EEOC") on April 8, 2023, and received her Right to Sue letter on January 17, 2024. *Id.*, ¶ 45. She timely filed the instant case on April 15, 2024. ECF No. 1. On January 22, 2025, the City Defendants filed the motion to dismiss currently before the Court.

## LEGAL STANDARDS

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the standard "requires more than labels[,] conclusions, and a formulaic recitation of a cause of action's elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

545 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

Further, pro se litigant's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Johnson v. City of New York*, No. 23-CV-3018 (DEH), 2024 WL 3520445, at *4 (S.D.N.Y. July 23, 2024) (citing *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020)). "The Court's mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's additional materials, such as [her] opposition memorandum." *Anderson v. City of New York*, 712 F. Supp. 3d 412, 421 n.1 (S.D.N.Y. 2024) (cleaned up) (citing cases). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Meadows*, 963 F.3d at 243. Ultimately, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (cleaned up).

## DISCUSSION

Construing the Amended Complaint liberally, Plaintiff asserts both a discrimination claim and a claim for failure to accommodate under the ADA. Additionally, Plaintiff asserts a claim under the FMLA. Plaintiff's ADA claims survive the City's Rule 12(b)(6) motion to dismiss, but her FMLA claim does not.

**A.    The ADA Discrimination Claim**

To state a claim for disability discrimination under the ADA, Plaintiff must "demonstrate that she suffered an adverse employment action under circumstances giving rise to an inference of discriminatory intent." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015). At the pleadings stage, a Plaintiff is "not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework," although the framework can be useful in assessing whether Plaintiff has alleged facts that "give plausible support to a minimal inference of discriminatory motivation." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015); *see also Samuels v. Urb. Assembly Charter Sch. for Computer Sci.*, No. 23-CV-1379 (RA), 2024 WL 4008165, at *4 (S.D.N.Y. Aug. 30, 2024) (holding that a plaintiff can survive a motion to dismiss an ADA claim if they have alleged facts to support a prima facie case).

To establish a prima facie case of discrimination under the ADA, Plaintiff must show that:

(1)    She was disabled or perceived to be disabled within the meaning of the ADA;

(2)    Her employer is subject to the ADA and had notice of her disability;

(3)    She was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and

(4)    She suffered adverse employment action;

(5)    The adverse employment action was taken because of her disability.

*See, e.g., McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009); *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134-135 (2d Cir. 2008) (discussing perceived disability and notice requirement). Plaintiff has adequately alleged a prima facie case of disability discrimination.

### 1.    Disability under the ADA

Plaintiff has sufficiently alleged that, at the time she sought unpaid leave from her employer, she was disabled within the meaning of the ADA. The ADA "defines a disability as 'a physical or mental impairment that substantially limits one or more major life activities' of the plaintiff." *Lewis v. R.L. Vallee, Inc.*, No. 24-1438, 2025 WL 1077412, at *2 (2d Cir. Apr. 10, 2025) (quoting 42 U.S.C. § 12102(1)(A)). This "is not meant to be a demanding standard," and must be "construed broadly in favor of expansive coverage." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting 28 C.F.R. § 35.108(d)(1)(i)). Major life activities include the ability to stand, walk, or care for oneself. *Id.* (citing 28 C.F.R. § 35.108(c)(1)(i)); *see also* 42 U.S.C. § 12102(2). Additionally, a disability lasting less than six months in duration can be actionable under the ADA. *Hamilton,* 3 F.4th at 92 (citing 28 C.F.R. § 35.108(d)(ix)). Plaintiff has sufficiently pled that her partial toe amputation resulted in her inability to walk, shower independently, or move about freely without assistance. FAC, ¶¶ 24, 43.

### 2.    Employer Notice of Disability

The City does not dispute that the Bronx DA's Office is subject to the ADA. ECF No. 44 ("Mem.") at 12. The City does contend, however, that Plaintiff's

8

pleading does not establish that she put them on notice of her disability. *Id.* at 12-13. The City argues that, while Plaintiff sought various extensions of medical leave, she does not allege that she ever disclosed the specific nature of her impairment to the City. Mem. at 13.

The FAC is to the contrary. Plaintiff alleges that she repeatedly informed HR that she was disabled due to her medical condition. *See, e.g.*, FAC, ¶¶ 11-12, 14-15, 17, 19, 21, 26 & Ex. H. And Plaintiff alleges she made the City aware of her toe amputation. Plaintiff's physician completed a detailed Disability Claim Form, which explained that Plaintiff's toe was amputated on August 31, 2022, as a result of an infection. FAC, Ex. M. In her opposition to the motion to dismiss, Plaintiff states that on September 15, 2022, she forwarded a copy of this Disability Claim Form to HR. ECF No. 50 ("Opp'n Mem."), ¶ 5. In light of Plaintiff's pro se status, the Court will consider this additional allegation as if set forth in the Amended Complaint. *Anderson*, 712 F. Supp. 3d at 421 n.1. Plaintiff has therefore sufficiently pled that she provided notice of her disability to the City. *See, e.g.*, *Kurlender v. Ironside Grp., Inc.*, No. 18-CV-3839 (JFB) (AYS), 2019 WL 1317405, at *3 (E.D.N.Y. Mar. 22, 2019) (holding that employer was on notice where plaintiff sought schedule change for "health reasons" and marked box for "disabled" on new employee information form); *Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 169 (E.D.N.Y. 2002), *aff'd*, 386 F.3d 192 (2d Cir. 2004) ("[I]t is sufficient if the employer had enough information to put it on notice that [the employee] might have a disability.").

### 3.  Essential Functions of Job

To survive a motion to dismiss, Plaintiff must allege that she could perform the essential functions of the job at issue with or without reasonable accommodation.  The Amended Complaint alleges that, as of the time of her termination, Plaintiff had been assessed by her medical provider as being able to return to work at the conclusion of her medical leave without any medical restrictions on her ability to perform her duties.  FAC, ¶ 28 & Ex. I.

While "[a]n indefinite leave extension . . . as a matter of law is not a reasonable accommodation," *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 181 (2d Cir. 2016) (citations omitted), a leave of absence may in some cases qualify as a reasonable accommodation, assuming it is of finite duration and is reasonably likely to enable the employee to return to work, *Vangas v. Montefiore Med. Ctr.*, 6 F. Supp. 3d 400, 413 (S.D.N.Y. 2014) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 (2d Cir. 2006)).  As alleged, and drawing all reasonable inferences in the nonmoving party's favor, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam), Plaintiff's first request for unpaid leave until October 14, 2022— and her second request for unpaid leave until December 5, 2022, when her doctor predicted she could work "without restriction"—could both be construed by a factfinder as finite and reasonable.  Accordingly, Plaintiff satisfies the third prong.

### 4.  Adverse Employment Action

For the purposes of an ADA discrimination claim, "a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the

terms and conditions of employment." *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 236 (S.D.N.Y. 2025). Certainly, "materially adverse changes in working conditions include termination of employment." *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (cleaned up). Plaintiff has therefore sufficiently pled this element of an ADA claim.

### 5.    Causal Connection

To state a claim for employment discrimination under the ADA, Plaintiff must allege facts that plausibly suggest her disability was the but-for cause of any adverse employment action. *Natofsky v. City of New York*, 921 F.3d 337, 348 (2d Cir. 2019); *see also Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 717 (S.D.N.Y. 2020). Plaintiff has alleged facts sufficient to support an inference that she was terminated due to her extended absence from work, which was a direct result of her medical condition. *Cf. Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 338 (2d Cir. 2000) ("An employer who . . . instead terminates the employee based on exhaustion of leave[] has discriminated 'because of' disability within the meaning of the ADA."). Indeed, Defendants concede in their papers that "Plaintiff's termination was based on Plaintiff's failure to return to work by October 14, 2022, after the expiration of her approved leave without pay." Mem. at 15. The Amended Complaint therefore states a claim for discrimination under the ADA. *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2023 WL 2529780, at *3 (S.D.N.Y. Mar. 15, 2023) (holding that, at the pleading stage of an ADA

11

discrimination case, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation").

The City counters that Plaintiff has failed to allege that any City decisionmaker harbored discriminatory animus towards her due to her disability. Mem. at 13-14.   Although such allegations may be probative of whether a causal connection plausibly exists, the relevant inquiry is whether the disability was the cause of the adverse employment decision.   Animus towards a person's disabled status is not required to demonstrate that an adverse action was taken because of a person's disability.

## B.    The ADA Reasonable Accommodation Claim

"Discrimination under the ADA includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Brady*, 531 F.3d at 134 (quoting 42 U.S.C. § 12112(b)(5)(A)).   To state a prima facie claim for failure to reasonably accommodate, Plaintiff must show that (1) she is a person with a disability; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, Plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations. *McMillan v. City of New York*, 711 F.3d 120, 125-126 (2d Cir. 2013).   As discussed above, the Amended Complaint satisfies the first three prongs.   Moreover, Plaintiff

12

has adequately alleged that the City refused to make a reasonable accommodation for her disability.

Defendants argue that Plaintiff never made any request for "modified duties, remote work, wheelchair accessibility or any other specific measures that would enable her to perform the essential functions of her job despite her medical conditions." Mem. at 16. While generally it is the responsibility of an individual with a disability to affirmatively make a request for an accommodation, an employer has an obligation to offer a reasonable accommodation where it is aware that an employee is disabled. *Brady*, 531 F.3d at 135. In such situations, the employer is required to engage in an "interactive process" to assess together whether an employee's disability can be accommodated. *Id.*

More fundamentally, Plaintiff alleges that she did request to remain in unpaid leave status until her doctors determined she was fit to return to work. A request for a temporary leave of absence can constitute a request for a reasonable accommodation. *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 139 (E.D.N.Y. 2023) ("[L]eave is a reasonable accommodation."). As Plaintiff was fired rather than granted additional unpaid leave, her request for such an accommodation was effectively denied.

Whether this accommodation was reasonable or would have caused Plaintiff's employer undue hardship, and whether the DA's office was required to investigate further accommodations for Plaintiff based upon the information it had at that

time, remains to be seen.  But at the motion to dismiss stage, Plaintiff has pleaded sufficient facts for her claims to go forward.

## C.    FMLA Claim

Employees are only eligible for FMLA leave after they have been employed twelve months "by the employer with respect to whom leave is requested" and have worked at least 1,250 hours during the previous 12-month period.  29 U.S.C.A. § 2611.  Plaintiff was hired by the DA's Office on August 8, 2022, FAC, ¶ 58, and thus was ineligible for FMLA coverage when she first sought leave on September 7, 2022.[1]

Plaintiff argues that, under the doctrine of equitable estoppel, the City Defendants are barred from invoking her ineligibility for FMLA as a defense because the DA's Office failed to inform her that she had not met the hours requirement when she sought FMLA leave.  FAC, ¶¶ 60-61.  "[A] party may be estopped from pursuing a claim or defense where: 1) the party to be estopped makes a misrepresentation of fact to the other party with reason to believe that the other party will rely upon it; 2) and the other party reasonably relies upon it; 3) to her detriment." *Kosakow v. New Rochelle Radiology Assocs.*, P.C., 274 F.3d 706, 725-26 (2d Cir. 2001) (citing, *inter alia*, *Heckler v. Cmty. Health Servs. of Crawford Cnty, Inc.*, 467 U.S. 51, 59 (1984)).  In the FMLA context, the Second Circuit has clarified that, given an employer's notice requirements under the FLSA, "an employer who

---

[1] Plaintiff had also been employed by another City agency until February 1, 2022, FAC, ¶ 58, but even the inclusion of this additional employment would not satisfy the 1,250 hours requirement for the year leading up to her accident.

remains silent when its employee announces that she plans to take medical leave is effectively misleading that employee into believing that she is protected by the FMLA." *Id.* at 726.

While the Bronx DA's Office did have a legal obligation to notify Plaintiff that she was ineligible for FMLA when she sought medical leave, Plaintiff's circumstances remain distinguishable from *Kosakow* and similar cases because she did not rely on her employer's silence as to her FMLA eligibility "to her detriment." The plaintiff in *Kosakow* alleged that, "had she been informed by [her employer] that she needed to have accumulated 1,250 hours of work in order [for] her leave be protected by the FMLA, as was their legal duty to inform her, she would have made sure to work the necessary hours." *Id.* at 725.  Accordingly, "it would not be unreasonable to infer that she would have been able to ensure that she met the mandatory minimum" before her scheduled surgery, given that she fell presumptively short by "less than fifty hours." *Id.*  In contrast, Plaintiff does not allege that she would have behaved differently had she been aware of her FMLA ineligibility.  Just the opposite, in fact, as the FAC alleges that Plaintiff underwent *emergency* surgery to amputate her toe due to an acute infection.  It was not until after that surgery had already occurred and Plaintiff sought FMLA forms from HR that the DA's Office was allegedly silent as to her ineligibility for coverage.  At that point in time, Plaintiff alleges she was unable to return to work due to her medical condition.  Plaintiff therefore did not take any actions in reliance upon the DA's Office silence to her detriment.  As such, Plaintiff's FMLA claim is dismissed.

## CONCLUSION

Accordingly, the City's motion to dismiss is GRANTED IN PART and

DENIED IN PART.  The Clerk of Court is directed to terminate ECF No. 43.

SO ORDERED.

Dated:  February 17, 2026
       New York, New York

                                                     JEANNETTE A. VARGAS
                                        United States District Judge

16